# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
BANNUM, INC.,                           )
                                        )
                Plaintiff,              )
                                        )
        v.                              )      Civil Action No. 15-1233 (ABJ)
                                        )
CHARLES E. SAMUELS, JR., et al.,        )
                                        )
                Defendants.             )
_____)
```

## <u>MEMORANDUM OPINION</u>

Plaintiff Bannum, Inc. has brought this action against defendants, seven current or former employees of the Federal Bureau of Prisons ("BOP"), alleging that "[d]efendants have engaged in a pattern of conduct over the past several years that has had the effect of debarring Bannum from receiving any new contracts from the BOP, Bannum's sole customer." Am. Compl. [Dkt. # 37] ¶¶ 2, 9–15. Plaintiff predicates its claims on this alleged "de facto debarment" and interference with contractual relations, and it seeks a declaratory judgment, injunctive relief, and monetary damages in excess of ten million dollars. *Id.* ¶¶ 166–87, 189–95. On behalf of the individually named defendants, the United States moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def.'s Mot. to Dismiss Am. Compl. [Dkt. # 38] ("Def.'s Mot."). It argues that the only proper defendant in this action is the United States, that the government has not waived its sovereign immunity in this instance, that plaintiff has failed to exhaust its administrative remedies, and that plaintiff has failed to state a plausible claim for relief in any event. Mem. in Supp. of Def.'s Mot. [Dkt. # 38-1] ("Def.'s Mem.") at 2–3.

The defendants are correct that the only proper defendant in this action is the United States, and so the government will be substituted as the sole defendant pursuant to the Westfall Act. 28

U.S.C. § 2679.  The Court also finds that it lacks subject matter jurisdiction over plaintiff's tort claims because the government has not waived its sovereign immunity, plaintiff's tort claims are barred under the FTCA, and plaintiff has not exhausted its administrative remedies.  Further, to the extent plaintiff attempts to raise a claim under the Due Process Clause of the Fifth Amendment, it has failed to allege sufficient facts to state a claim.  Therefore, for the reasons set forth in more detail below, the Court will grant defendants' motion and dismiss this case in its entirety.

## BACKGROUND

Plaintiff is a Kentucky corporation with its principal place of business in Odessa, Florida. Am. Compl. ¶ 8.  The seven individual defendants are Charles E. Samuels, Jr., the Director of the BOP; Catherine Scott, Chief of the BOP National Acquisitions and Systems Section; Timothy R. Barnett, a BOP Residential Reentry Manager; Cheryl Dennings, a Community Corrections Administrator for BOP; Lola Lee-Brown, a BOP Contracting Officer; Osoria Toston, a former Contract Oversight Specialist for BOP; and Andrea Johnson, a former Community Corrections Regional Coordinator for BOP.  *Id.* ¶¶ 9–15.

Plaintiff operates Residential Reentry Centers ("RRCs") for federal offenders throughout the United States pursuant to contracts with the BOP.  Am. Compl. ¶ 8.  Although plaintiff alleges that it currently operates six RRCs, it claims that "at one point [it] had as many as seventeen different RRCs" and that this was "prior to the [d]efendants' attempts to eliminate Bannum from BOP contracting*." Id.*  Plaintiff states that it was under contract with BOP for eleven RRCs as recently as 2009 but that its bids for new RRC contracts since 2009 have been unsuccessful. *Id.* ¶¶ 23–26.  Plaintiff concedes, however, that during the same time period, the BOP has exercised options and extended some of its existing contracts with plaintiff.  *Id.* ¶¶ 25, 38.

Plaintiff's allegations in the complaint are long and detailed, but essentially, it maintains that the individual defendants "gave Bannum a very difficult time" in the contract solicitation process, engaged in a "scheme . . . to put Bannum out of business and ensure that it does not receive any new government contracts," "treat[ed] Bannum differently than other contractors," and conspired to deprive Bannum of contracts when other competitors were involved in the bidding process.  Am. Compl. ¶¶ 32, 35, 39, 43.

For example, plaintiff claims the BOP "raided" Bannum Place of Tupelo, one of plaintiff's RRCs, "during the bidding evaluation period for the follow-up contract" on that center, and as a result, "Bannum's current contract files were confiscated by the BOP" and "the facility was damaged." Am. Compl. ¶¶ 72, 75–76.  Further, Plaintiff claims that it was forced by defendants to suspend or improperly terminate its employees at various RRCs and that the subsequent contracts for those RRCs were awarded to plaintiff's competitor.  *Id.* ¶¶ 83, 85, 93, 103, 109(e).  Plaintiff also asserts that defendants "would issue unilateral modifications [to its contracts], thereby increasing the amount of wages that Bannum was required to pay its employees" and that the BOP "refuse[d] to timely reimburse Bannum" for these expenses. *Id*. ¶¶ 122, 124

Plaintiff initiated this action on July 31, 2015, Compl. [Dkt. # 1], and it filed its amended complaint on March 9, 2016.  Am. Compl.  In Count I, plaintiff alleges that defendants subjected it to a "de facto debarment" by "engag[ing] in a campaign to sabotage [plaintiff's] operations, harm its ability to act as a contractor, defame its contract performance history, and damage [its] ability to obtain new business."  *Id.* ¶¶ 170, 175.  Plaintiff insists that what it characterizes as a debarment "implicate[s] the due process clause of the 5th Amendment to the United States Constitution, and requires, at minimum, proper notice to Bannum of the charges on which the debarment is based, and that Bannum be afforded an opportunity to refute those charges."

*Id.* ¶ 177.   In Count II, plaintiff brings a claim for "interference with contractual relations, prospective contractual relations, and prospective advantageous economic relationship," claiming that defendants "have used and misused their positions and authority as employees of the BOP to interfere with and disrupt the existing and prospective business relationships of Plaintiff Bannum, Inc. to the point of destroying those relationships and eliminating Plaintiff Bannum, Inc. as a contractor."   *Id.* ¶ 190.   According to plaintiff, defendants carried out this attack in a number of ways, including by making false and defamatory statements about Bannum, pursuing unwarranted investigations into alleged wrongdoing by the contractor, and forcing the company to fire particular employees.   *Id.* ¶ 190(a)–(f).

On April 21, 2016, defendants moved to dismiss this case in its entirety, Def.'s Mot., and plaintiff filed its opposition to that motion on June 10, 2016.   Pl.'s Mem. in Opp. to Def.'s Mot. [Dkt. # 40] ("Pl.'s Opp.").   Defendants filed a reply on July 22, 2016.   Reply in Supp. of Def.'s Mot. [Dkt. # 42] ("Def.'s Reply").

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"   *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).   Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.   *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

**Subject Matter Jurisdiction**

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**Failure to State a Claim**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim

is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning*, 292 F.3d at 242. In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I. The United States will be substituted as the defendant pursuant to the Westfall Act.

The Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679, commonly referred to as the Westfall Act, "accords federal employees absolute immunity

from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). The immunity is triggered if the Attorney General or his delegate certifies that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Jacobs v. Vrobel*, 724 F.3d 217, 219–20 (D.C. Cir. 2013), quoting 28 U.S.C. § 2679(d)(1). "Upon certification, the employee is dismissed from the action, [and] the United States is substituted as the defendant." *Id.* at 220, citing 28 U.S.C. § 2679(d)(1)–(2). The Supreme Court has made clear that "[i]mmunity-related issues . . . should be decided at the earliest opportunity." *Osborn*, 549 U.S. at 253.

But a district court should not treat a Westfall Act certification as unimpeachable, and a "plaintiff may contest the Attorney General's scope-of-employment certification." *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009), citing *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995). If a plaintiff mounts that challenge, "the certification 'constitute[s] *prima facie* evidence that the employee was acting within the scope of his employment,'" *id.*, quoting *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (per curiam), and the plaintiff must rebut that presumption by alleging "sufficient facts that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment." *Id.* (alterations in original), quoting *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003). The court should adhere to the teachings of *Iqbal* and *Twombly* in determining whether the plaintiff has met his or her burden to rebut the presumption. *Jacobs*, 724 F.3d at 221. Only if the plaintiff satisfies that burden will he or she, "if necessary, attain 'limited discovery' to resolve any factual disputes over jurisdiction." *Id.* at 220–21, quoting *Wuterich*, 562 F.3d at 381.

Here, defendants have filed a Westfall Act certification from the Chief of the Civil Division of the Office of the United States Attorney for the District of Columbia, which avers that each of

the individual BOP defendants "was an employee of the United States at the time of the alleged incidents out of which plaintiff's claims arose, [and] their acts or omissions, if any, in respect of those alleged incidents were taken or omitted within the scope of their employment as employees of the United States."  Certification, Ex. A to Def.'s Mot. [Dkt. # 38-2].  Based on that certification, defendants have moved to substitute the United States as the only proper defendant in this matter. Def.'s Mem. at 8–22.

Plaintiff challenges the certification by insisting that it "has alleged sufficient facts, at a minimum, to raise a disputed issue as to whether the individual [d]efendants have acted beyond the scope of their employment," and so it maintains that it "is entitled to jurisdictional discovery as to the scope of employment of each of the individual [d]efendants."  Pl.'s Opp. at 15–16.  The Court disagrees. Plaintiff has failed to rebut the presumption created by the certification that the defendants were acting within the scope of their employment because it has alleged no facts to support such a conclusion.  Therefore, plaintiff is not entitled to discovery on this issue.

"In determining whether an employee acted within the scope of his employment, [a court must] consider the substantive law of the jurisdiction where the employment relationship exists – here, the law of the District of Columbia."  *Jacobs*, 724 F.3d at 221, citing *Majano v. United States*, 469 F.3d 138, 141 (D.C. Cir. 2006).  Courts in this Circuit analyze this issue by considering whether the employee's conduct "(a) [] is of the kind he is employed to perform; (b) [] occurs substantially within the authorized time and space limits; [and] (c) [] is actuated, at least in part, by a purpose to serve the master."  *Id.*, citing Restatement (Second) of Agency § 228.  "The test is 'objective' and is 'based on all the facts and circumstances,'" *id.*, quoting *Weinberg v. Johnson*, 518 A.2d 985, 991 (D.C. 1986), and it has been "broadly interpreted."  *Id.*  Accordingly, under District of Columbia law, "[t]he scope-of-employment test often is akin to asking whether the

8

defendant merely was on duty or on the job when committing the alleged tort." *Id.*, quoting *Harbury v. Hayden*, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008).

Here, the certification itself constitutes *prima facie* evidence that the individual BOP defendants were "on duty or on the job" when engaging in the alleged misconduct.[1] *See id.* To rebut the presumption, plaintiff asserts that defendants were not acting within the scope of their employment because they acted with malice toward plaintiff – it alleges that they engaged in a "concerted effort . . . to strip Bannum of contracts" and award them to a competitor, wrongfully investigated its employees, and engaged in "numerous examples of sabotage."  Pl.'s Opp. at 17. "While the BOP may allege that these efforts are incidental or related to their employment," plaintiff argues that these acts cannot be within the scope of defendants' employment because "the underlying conduct still involved the systematic stripping of Bannum's contracts without due process."  *Id.*  Essentially, plaintiff argues that the *way* in which the individual defendants carried out their duties moves their actions outside the scope of their employment.

---

[1]     Moreover, plaintiff's allegations in the amended complaint support the conclusion that defendants were acting within the scope of their employment.  Plaintiff's claims concern defendants' duties related to the administration of contracts, which fall within the purview of the responsibilities of federal contracting personnel. *See* 48 C.F.R. § 2.101 (defining various positions held by defendants such as "contracting officer" and "contracting officer's representative").  For example, plaintiff claims that defendants made it difficult to win new contracts, conducted investigations at four facilities, modified ongoing contracts it had with the BOP, refused to timely reimburse it, and misused the Contractor Performance Assessment Reports Process.  Am. Compl. ¶¶ 38–47, 62–63, 72–73, 83, 89–93, 111, 124, 144.  This alleged misconduct is directly related to defendants' employment responsibilities, demonstrating that defendants' conduct is "of the kind [they are] employed to perform." *Jacobs*, 724 F.3d at 221, quoting Restatement (Second) of Agency § 228(1)(a).  Even further, the job titles of the named defendants indicate that the acts or omissions plaintiff challenges fall within the scope of defendants' employment as contracting personnel. *See* Am. Compl. ¶¶ 9–15 (Charles E. Samuels, Jr., the Director of the BOP; Catherine Scott, Chief of the BOP National Acquisitions and Systems Section; Timothy R. Barnett, a BOP Residential Reentry Manager; Cheryl Dennings, a Community Corrections Administrator for BOP; Lola Lee-Brown, a BOP Contracting Officer; Osoria Totson, a former Contract Oversight Specialist for BOP; and Andrea Johnson, a former Community Corrections Regional Coordinator for BOP).

But plaintiff misses the point:  "[t]he proper [scope-of-employment] inquiry . . . 'focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf.'"  *Ballenger*, 444 F.3d at 664, quoting *Weinberg*, 518 A.2d at 992.  For example, in *Ballenger*, the court upheld the district court's substitution of the United States as a defendant for a congressman where the plaintiff brought an action for defamation and slander against the congressman for certain statements he made on the telephone to a reporter.  444 F.3d at 659.  The court reasoned that "[t]he appropriate question . . . is whether th[e] telephone conversation" in which the defendant allegedly made a defamatory statement about the plaintiff "was the kind of conduct [the plaintiff] was employed to perform" – and not whether the allegedly defamatory sentence itself was within the scope of the plaintiff's employment.  *Id.* at 664.  The court concluded that the congressman's telephonic interaction with the press fell within the scope of his duties, which require him to have a relationship with the public.  *Id.* at 664–65; c*ompare Majano*, 469 F.3d at 142 (finding a question of fact as to whether the defendant's physical assault of another employee was independent of her duty to report to work or within her scope of employment) *with Jacobs*, 724 F.3d at 221–23 (finding a supervisor's alleged interference with plaintiff's attempts to secure alternative employment opportunities was within the scope of his employment because the type of act that the supervisor allegedly took was the kind of conduct he was employed to perform, and was intended to benefit his employer.).

In other words, the relevant question here is whether the individual defendants were acting within the scope of their employment when they were involved in the award and administration of the contracts at issue.  Plaintiff's allegations that the defendants "maliciously" conducted investigations and other "prejudicial and improper" actions challenge the *manner* in which

defendants performed their work-related duties, not the *nature* of the duties themselves.   Am. Compl. ¶¶ 145, 190(c).   As in *Ballenger*, the basic characteristics of the actions, not the allegedly tortious character of the actions, control.   444 F.3d at 662.   Therefore, the Court finds that plaintiff has not alleged sufficient facts to allow for jurisdictional discovery as to the scope of employment of each of the individual defendants.   *See Wuterich*, 562 F.3d at 382 (finding "there is no right to even limited discovery in a Westfall Act case unless and until a plaintiff alleges sufficient facts to rebut the government's certification").

Because plaintiff has not alleged sufficient facts to rebut the presumption created by the government's certification, and because the underlying nature of the individual defendants' actions here was tied to defendants' roles with the BOP in supervising government contracts, the Court finds that the named defendants were acting within the scope of their employment.   So, pursuant to the Westfall Act, the Court will substitute the United States as the sole defendant.   *See Jacobs*, 724 F.3d at 220– 21.   All claims against Charles E. Samuels, Jr., Catherine Scott, Timothy R. Barnett, Cheryl Dennings, Lola Lee-Brown, Osoria Toston, and Andrea Johnson in their individual capacities are dismissed.

**II.     The Court lacks subject matter jurisdiction over plaintiff's tort claims because the United States has not waived its sovereign immunity under the Federal Torts Claims Act and plaintiff has not exhausted its administrative remedies.**

After a Westfall Act substitution in a tort suit, "the suit is governed by the Federal Tort Claims Act ('FTCA') and is subject to all of the FTCA's exceptions for actions in which the [g]overnment has not waived sovereign immunity."   *Wuterich*, 562 F.3d at 380, citing *Osborn*, 549 U.S. at 230.   The FTCA bars plaintiffs from bringing certain claims against the government, *see* 28 U.S.C. § 2680, and sets requirements for administrative exhaustion of claims and timely filing of administrative claims.   28 U.S.C. § 2401(b).   Here, the government has not waived its

sovereign immunity, plaintiff's tort claims are specifically excluded under the FTCA, and plaintiff has failed to exhaust its administrative remedies.   Therefore, the Court lacks subject matter jurisdiction over plaintiff's tort claims.

### A.  Plaintiff's tort claims against the BOP are barred under the FTCA.

Plaintiff attempts to avoid the requirements of the Westfall Act and the FTCA by arguing that this is a situation in which the United States has waived its sovereign immunity, and it points to the Administrative Procedure Act ("APA").  Plaintiff correctly notes that the APA "waives the [g]overnment's immunity from actions seeking relief other than money damages."  Pl.'s Opp. at 22; s*ee* 5 U.S.C. § 702 (applying waiver to suits seeking equitable relief).  But this lawsuit is plainly an action for monetary relief.  The complaint begins with the announcement that it seeks "declaratory relief, permanent injunction, and monetary and other relief based on the de facto debarment of Plaintiff Bannum, Inc."  Am. Compl. ¶ 1.  And the prayer for relief asks the Court to "[a]ward damages in excess of $10,000,000.00."  *Id*. at p. 30.  So, plaintiff's complaint clearly asserts claims for monetary damages, claims to which the United States has not waived its sovereign immunity.

Because the government has not waived its sovereign immunity, the Westfall Act certification "converts the tort suit into a FTCA action over which the federal court lacks subject matter jurisdiction and has the effect of altogether barring plaintiff's case" if one of the FTCA's exceptions applies.  *Wuterich,* 562 F.3d at 380.  And here defendants point to the exception for "[a]ny claim arising out of . . . libel, slander, . . . or interference with contract rights."  28 U.S.C. § 2680(h).

To determine whether a claim is subject to one of the FTCA exceptions, it is the underlying character of the claim that is determinative, not the label utilized by the plaintiff. *Edmonds v.*

*United States*, 436 F. Supp. 2d 28, 35 (D.D.C. 2006), quoting *Johnson v. United States*, 547 F.2d 688, 691 (D.C. Cir. 1976) (internal quotation marks omitted) ("[A] litigant cannot circumvent the [FTCA] by the simple expedient of drafting in terms of negligence a complaint that in reality is a claim as to which the United States remains immunized."); *Art Metal-U.S.A., Inc. v. United States,* 753 F.2d 1151, 1156 (D.C. Cir. 1985), quoting 28 U.S.C. §2680(h) (internal quotations omitted) (concluding that claims for injurious falsehoods, disparagement of property, slander of goods, or trade libel are claims arising out of libel or slander under the FTCA).

Here, plaintiff's amended complaint is centered entirely upon alleged interference with existing and prospective contract rights, claims which are specifically barred under the FTCA. 28 U.S.C. §2680(h). The allegations in Count II, entitled "Interference With Contractual Relations, Prospective Contractual Relations, and Prospective Advantageous Economic Relationship," Am. Compl. at p. 28, directly allege that defendants used their positions to "interfere with and disrupt the existing and prospective business relationships of Plaintiff Bannum." *Id.* ¶ 190. Plaintiff's claims stem from the alleged duty not to interfere with a current or prospective economic advantage, *Art Metal-U.S.A. Inc.*, 753 F.2d at 1154, and therefore, this type of claim is barred under the FTCA. *See* 28 U.S.C. §2680(h).

Count I alleges that "[d]efendants have engaged in a campaign to sabotage Bannum's operations, harm its ability to act as a contractor, defame its contract performance history, and damage Bannum's ability to obtain new business." Am. Compl. ¶ 170. While plaintiff casts these circumstances as "de facto debarment," *id.* at p. 25, these allegations fall within the scope of the FTCA exception because the substance of this count relates directly to the awarding of contracts. *See Edmonds*, 436 F. Supp. 2d at 35. Plaintiff's allegation that defendants have "damage[d]

Bannum's ability to obtain new business" is the type of tortious interference with contract claim barred under the FTCA.  Am. Compl. ¶ 170; 28 U.S.C. §2680(h).

To the extent that Count I also encompasses a claim for libel or slander, such claims are also specifically barred under section 2680(h) of the FTCA.  Plaintiff's allegations concerning defendants' alleged "campaign to sabotage" and "defame its contract performance history," Am. Compl. ¶ 170, seek relief for the same type of reputational harm that the D.C. Circuit concluded is barred under that provision.  *See Art Metal-U.S.A., Inc.*, 753 F.2d at 1156 (finding claims that the General Services Administration provided false information concerning the plaintiff's products that damaged its standing, reputation, and prestige fell within the FTCA exception).

Here, plaintiff's claim that "[t]he rumors, statements, and actions by [d]efendants constitute an illegal *de facto* debarment of [p]laintiff from receiving contracts from the BOP," Am. Compl. ¶ 175, is similarly subject to dismissal.  28 U.S.C. §2680(h).

Therefore, the Court lacks subject matter jurisdiction over plaintiff's claims alleging de facto debarment and tortious interference with contract rights, including those alleging defamation, and the complaint must be dismissed on that ground alone.

**B. Plaintiff's tort claims also fail because plaintiff has not exhausted all available administrative remedies before bringing this suit.**

Because a suit is "governed by the FTCA" following a Westfall Act substitution, the FTCA's requirements of administrative exhaustion and timeliness in bringing claims apply. *Wuterich*, 562 F.3d at 380.  The FTCA makes clear that "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss . . . caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency."  28 U.S.C. § 2675(a).

14

Where a plaintiff does not exhaust his administrative remedies, the FTCA bars his tort claims. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (affirming dismissal of plaintiff's FTCA claim for lack of subject matter jurisdiction because "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"). The only recognized exceptions to the exhaustion requirement are where administrative remedies are inadequate or where irreparable injury would result absent immediate judicial review. *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 108 (D.C. Cir. 1986).

Here, plaintiff's claims are barred because it has failed to exhaust its administrative appeals options within the BOP. Plaintiff has not alleged that it has exhausted its administrative remedies in its complaint, and the BOP has not received any administrative claims from plaintiff regarding the tort claims presented in this action. *See* Am. Compl.; Decl. of Renee Brinker Fornshill, Ex. 4 to Def.'s Mot. [Dkt. # 38-4] ("Fornshill Decl."). Similarly, plaintiff has made no allegation that the BOP's procedures for handling administrative appeals are inadequate or that it would suffer "irreparable injury" absent immediate judicial review. *Randolph-Sheppard Vendors of Am.*, 795 F.2d at 108. Therefore, plaintiff's tort claims fail because plaintiff has not "first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a).

### III. To the extent plaintiff attempts to raise a claim under the Due Process Clause, it has failed to allege sufficient facts necessary to state a claim.

Count I also seems to be based in part on the Due Process Clause of the Fifth Amendment, and the constitutional allegations underlie plaintiff's requests for equitable or injunctive relief. *See, e.g.*, Am. Compl. ¶ 177 ("Such a debarment, tinged with allegations of a lack of integrity on the part of Bannum, implicate the due process clause of the 5th Amendment to the United States Constitution, and requires, at minimum, proper notice to Bannum of the charges on which the debarment is based, and that Bannum be afforded an opportunity to refute those charges."). While

a formal suspension or debarment involves a series of procedural steps that would afford the contractor due process, *see* FAR 9.406-3, plaintiff makes clear that the BOP has not initiated any formal debarment procedures pursuant to Part 9 of the Federal Acquisition Regulations. *See* Pl.'s Opp. at 19. Rather, plaintiff alleges that it has been debarred in fact.[2]

The D.C. Circuit has acknowledged that there are circumstances when the government could effectively bar a contractor from receiving government business without invoking formal debarment proceedings, and it has held that de facto debarment, "government stigmatization that broadly precludes individuals or corporations from a chosen trade or business[,] … deprives them of liberty in violation of the Due Process Clause." *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003). But this sort of government action would only implicate the constitution if a contractor is effectively barred from "virtually all [g]overnment work." *Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 955 (D.C. Cir. 1980); *see also Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959) (finding plaintiff must show that the government "has seriously affected, if not destroyed, his ability to obtain employment in [his] field" to show broad preclusion). Merely showing that the plaintiff "won some and lost some in retaining and bidding on government contracts" is insufficient. *See Trifax Corp.*, 314 F.3d at 644.

Here, plaintiff has not alleged sufficient facts to show it has been so completely precluded from receiving contracts that it has grounds to raise a due process claim. According to plaintiff's own complaint, plaintiff maintains contracts with the BOP at six facilities, and the BOP has exercised options to continue certain existing contracts with plaintiff since 2009. Am. Compl. ¶¶

---

2       While the Court must predicate its ruling on the facts set forth in the amended complaint, defendants dispute this characterization of plaintiff's standing and they point to a series of contract awards that belie plaintiff's claim. Def.'s Mem. at 33–37.

24–25, 38.   While plaintiff has lost some new bids for additional work from the BOP, the fact that

it has won some and lost some is insufficient to raise a claim under the due process clause because

it does not show a sufficiently broad exclusion from obtaining work.   *Trifax Corp.*, 314 F.3d at

644–45.   Therefore, to the extent plaintiff attempts to raise due process clause claims in its

amended complaint, such claims are dismissed.

## CONCLUSION

Pursuant to the Westfall Act, the United States government will be substituted as the sole

defendant in this action.   Because the government has not waived its sovereign immunity as to any

tort claims plaintiff asserts, the FTCA applies.   As a result, this Court lacks subject matter

jurisdiction over plaintiff's tort claims not only because they are barred under the FTCA, but

because plaintiff has failed to exhaust its administrative remedies.   Furthermore, plaintiff has failed

to allege sufficient facts to state a claim under the Due Process Clause of the Fifth Amendment.

Therefore, the Court will grant the government's motion and dismiss this case in its entirety.

A separate order will issue.

_____

AMY BERMAN JACKSON
United States District Judge

DATE:  October 28, 2016